UNITED STATES *v.* DRAEGER SHIPPING CO., INC. (No. 4354)[1]

[1] C. A. D. 199.

United States Court of Customs and Patent Appeals, March 23, 1942

*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Dorothy C. Bennett*, special attorney, of counsel), for the United States.

*Julius J. Rosenberg* for appellee.

[Oral argument December 2, 1941, by Mr. Lawrence and Mr. Rosenberg]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, in reappraisements 128079–A and 128080–A.

The imported merchandise consists of 100 sets of unassembled parts of so-called "Facit calculating machines, E. K. model." It was exported from Sweden during the months of November and December, 1937. Each unassembled set of parts (for a complete machine) was invoiced at 266.10 Swedish crowns and was appraised by the appraiser at the port of New York at 401.10 Swedish crowns, which the appraiser held to be the cost of production as defined in section 402 (f) of the Tariff Act of 1930.

The importer appealed for reappraisement, and claimed on the trial before the trial court that, although the appraiser was right in holding that the dutiable value of each unassembled set of parts was its cost of production, he erred in finding that the cost of production was 401.10 Swedish crowns per set and that he should have found it to be 279.33 Swedish crowns.

Counsel for the Government contended before the trial court and the appellate division of the Customs Court, and contend here, that the proper dutiable value of the merchandise is the United States value as defined in section 402 (e) of the Tariff Act of 1930.

United States value and cost of production are defined in the Tariff Act of 1930 as follows:

SEC. 402. VALUE.

\*     \*     \*     \*     \*     \*     \*

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured

otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The trial court held on the evidence of record that there were no foreign, export, or United States values for the involved merchandise; that the proper dutiable value was the cost of production; that the cost of production was 279.33 Swedish crowns per set, as claimed by counsel for the importer, and judgment was entered accordingly.

On appeal, the appellate division of the Customs Court affirmed the judgment of the trial court.

It is conceded by counsel for each of the parties that the involved merchandise has neither foreign nor export values.

It appears from the consular invoice and the entry in reappraisement 128079–A that, in addition to the unassembled parts for 50 Facit calculating machines, the shipment included 63 *assembled* Facit calculating machines of the same model as the machines for which the unassembled parts were designed. The assembled machines, which are not involved in this appeal, were entered by the importer and appraised by the local appraiser at their United States value—$123.05, each.

It appears from the record that unassembled calculating machines, such as are here involved, are neither sold nor freely offered for sale in the United States in their unassembled condition; that before they are sold in this country, the unassembled machines are taken to the importer's factory and there assembled into complete machines; and that, when so assembled, they are freely offered for sale and sold in the United States at the same price as that asked and received for machines of the same model imported in an assembled condition.

No issue is raised here by counsel for the Government as to the correctness of the finding by the trial court and the appellate division of the Customs Court that 279.33 Swedish crowns represents the cost of production, as defined in section 402 (f), *supra*, of each of the unassembled machines, should it be held that the cost of production is the proper basis for determining their dutiable value. It is contended by counsel for the Government however, that "the unassembled sets of parts of E. K. model machines, and the assembled machines of that model, are made from the same materials, for the same use, and cost exactly the same to produce except for the expense of assembly"; that as the machines when assembled in the United States are sold at the same price as the machines imported in an assembled condition, the unassembled and the assembled machines are commercially interchangeable and are similar for valuation purposes; and that, therefore, the unassembled machines should have been appraised at the United States value—$123.05—of the machines imported in an assembled condition. In support of their contention, counsel rely upon the decisions in the cases of *Carey & Skinner* v. *United States*, 13 Ct. Cust. Appls. 7, T. D. 40848 and *Gevaert Co. of America, Inc.* v. *United States*, Reap. Dec. 3128, the appeal from which was dismissed by this court April 5, 1934—21 C. C. P. A. (Customs) 617, T. D. 47224. Both of those cases relate to the repacking in this country of imported merchandise in order to get it in "condition, packed ready for delivery," and it was held in each of those cases that such repacking charges were proper items to be included in determining the United States value of the imported merchandise. How the decisions in those cases can have any bearing upon the issue here presented by the Government, we are at a loss to understand.

It is further contended by counsel for the Government that "the slight difference in the cost of production, due to cost of assembly, does not destroy *similarity* for valuation purposes under section 402 (e), defining United States value."

It appears from the consular invoices that the invoice price of the unassembled machines was 266.10 Swedish crowns per unit, which, according to tabulations submitted by counsel for the Government, is the equivalent of $68.58, and that the purchase price of the machines imported in an assembled condition was 325 Swedish crowns each, which, according to Government counsels' tabulations, is the equivalent of $83.79. That is to say, the unassembled machines cost the importer $15.21 less than those imported in an assembled condition, which is a difference in cost of approximately 18 per centum. There is no evidence of record as to the cost to the importer of assembling the unassembled machines. However, according to the consular invoices and Government counsels' tabulation there is a substantial

difference in value between the unassembled parts and the assembled machines. It is unnecessary, therefore, that consideration be given to calculations of the cost of production which are attached to the affidavit—Exhibit 1—of Johan Elof Ericsson, managing director of the exporter, and from which it appears that the difference in the cost of production in Sweden between the unassembled parts and the assembled machine, including labor, overhead, packing cost, and profit, is much greater than the difference in cost to the importer as appears from the consular invoices.

In the case of *United States* v. *H. W. Robinson & Co.*, 25 C. C. P. A. (Customs) 395, T. D. 49484, counsel for the Government contended, and this court, in reversing the judgment appealed from, held, that the combined export values of the parts of metal-mounted glass perfume bottles and metal-mounted glass atomizers (the parts consisting of glass perfume bottles and metal mountings therefor and glass atomizers and metal mountings therefor) could not be combined in order to arrive at the export values of the completed articles, the completed articles not being freely offered for sale nor sold in the principal markets of the country of exportation—Czechoslovakia—for export to the United States. In so holding, the court said:

If the decision appealed from is correct [the appellate division of the Customs Court having held in substance that the export values of the unassembled parts might properly be combined to arrive at the export value of the assembled articles], an agent of an importer, or the importer himself, may visit a foreign country, there buy from different manufacturers all the parts of an article, one manufacturer finally completing and assembling the article, and the American importer may successfully claim the export value of the completed article is the export value of the various parts thereof, when the completed article is not freely offered for sale for exportation to the United States in the manner provided by section 402 (d).

In order to arrive at this conclusion, it must be assumed that a completed article has no greater value than the separate parts of which it is composed. This assumption, it seems to us, is impossible. It is unthinkable to us that any foreign dealer would go to the trouble and expense of selecting and purchasing the various parts of an article, cause them to be assembled and made integral as one complete article, and then freely offer the complete article to all purchasers in the usual wholesale quantities at a price equal to the combined values of the separate parts.

Neither can it be presumed that, if the metal mounter had purchased the glass bottles and mounted them with metal, he would have freely offered them for sale at a price which would have included a profit arising only out of the mounting of the same, without any profit upon the investment made by him in the purchase of the glass bottles.

The same observation would be applicable if the manufacturer of the glass bottles bought the mountings for the bottles. Presumably the glass bottle manufacturer would not have freely offered the completed bottles for sale without first adding a profit upon his investment in the mountings.

Neither counsel for appellee nor counsel for the Government has produced any authorities upon this point, and we have found none.

However, it is clear to us that, under the facts in this case, such a method of arriving at dutiable value may not be resorted to. It is possible that, under a different state of facts, where all the parts are made and sold by a single manufacturer, and their attachment together may be made by the ultimate user, either in the country of exportation or in the United States, through mere manual manipulation, a combining of the export values of the parts may be resorted to in determining the export value of the completed articles. Such a case is not here present, and we express no opinion with respect thereto.

We are compelled to hold that there is no presumption that the export value of a completed article is the same as the combined export values of the parts of which the article is composed, and therefore proof of the export values of the separate parts of which the involved merchandise was composed does not constitute any substantial evidence of the export value of the complete articles, in the condition in which they were imported.

Although in that case counsel for the Government contended that the export values of the parts of the articles there involved could not, under section 402 (d) defining *export value*, be combined in order to arrive at the *export values* of the completed articles, which articles were neither sold nor freely offered for sale in the principal markets of the country of exportation for export to the United States, it is here contended by Government counsel that the involved unassembled parts which are neither sold nor freely offered for sale in the United States are similar for valuation purposes to the machines imported in an assembled condition which have a *United States value* as defined in section 402 (e), *supra*.

As will be observed from the quoted excerpt from our decision in the *H. W. Robinson & Co.* case, *supra*, it was suggested that under a state of facts not there existing the *combined export values of the unassembled parts* of an article might possibly be considered as the export value of the assembled article, which article was not freely offered for sale in its assembled condition in the country of exportation for export to the United States. So here, it may be said that there may be instances, depending upon established facts, where articles not completely assembled might be considered similar for valuation purposes to articles imported in an assembled condition which have a United States value as defined in section 402 (e), *supra*.

In the instant case it has been established by some substantial evidence that at the time of the exportation of the involved unassembled parts the value of such parts was substantially less than the price at which the calculating machines imported in an assembled condition were freely offered for sale in the principal markets of the United States. For that reason, and for reasons set forth in the *H. W. Robinson & Co.* case, *supra*, we are of opinion that the involved unassembled parts are not similar, within the purview of section 402 (e) defining United States value, to the machines imported in an assembled condition, and do not, therefore, have a United States value.

For the reasons stated, the judgment is *affirmed*.